UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| T-MOBILE NORTHEAST LLC and | ) | |
| U.S. WIRELESS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 11-11551-NMG |
| CITY OF LOWELL, MASSACHUSETTS, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

November 27, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff T-Mobile Northeast LLC ("T-Mobile") is a licensed provider of personal

wireless communication services, and plaintiff U.S. Wireless, Inc. ("U.S. Wireless") is

engaged in the development of wireless infrastructure for use by licensed wireless carriers.

Together they have brought this action against the City of Lowell, Massachusetts ("City

or "Lowell"), its Zoning Board of Appeals ("ZBA" or "Board"), and the individual

members of the ZBA in their official capacities, challenging the defendants' denial of their

application for a special permit to construct a wireless communications facility on

cemetery property located at 363 Boston Road in Lowell.

In its written decision, the Board provided two reasons for denying the plaintiffs' application.  First, although the Board found that there was a gap in in-house coverage within the plaintiffs' target area, it concluded that the existence of a gap in such coverage "does not have the effect of prohibiting the provision of personal wireless service."  Second, the Board determined that the proposed facility would have an adverse impact on the surrounding neighborhood, and specifically on the social and economic needs of the neighborhood.  By their complaint, T-Mobile and U.S. Wireless allege that the Board's decision violated the Telecommunications Act of 1996 ("TCA") because it was not supported by substantial evidence contained in a written record as required by 47 U.S.C. § 332(c)(7)(B)(iii) (Count I), and because it prohibited, or had the effect of prohibiting, the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) (Count II).  In connection with their claims, the plaintiffs are requesting relief in the form of a declaratory judgment that the defendants' actions violated the TCA, and an injunction directing the defendants to grant them all permits and approvals necessary for the construction of their proposed facility at 363 Boston Road.

The matter is presently before the court on the "Plaintiffs' Motion for Summary Judgment" (Docket No. 26), by which T-Mobile and U.S. Wireless are seeking summary judgment in their favor on both their substantial evidence and their effective prohibition claims.  In their opposition, the defendants, in contradiction to well-established law, appear to rely principally on new arguments that were not addressed in the Board's decision and fail to refute the plaintiffs' claims.  As detailed herein, this court concludes that the Board's

stated reasons for denying the plaintiffs' application were not supported by substantial

evidence in the written record, and that therefore, the plaintiffs are entitled to summary

judgment on Count I of their complaint.  In light of this conclusion, it is unnecessary to

consider the plaintiffs' effective prohibition claim at this time.[1]  Accordingly, this court

recommends to the District Judge to whom this case is assigned that the plaintiffs' motion for

summary judgment be ALLOWED with respect to Count I of the complaint, and that the

defendants be directed to issue all permits and approvals necessary for the construction of the

plaintiffs' proposed telecommunications facility at 363 Boston Road in Lowell.

## II.  <u>STATEMENT OF FACTS</u>[2]

The following facts are undisputed unless otherwise indicated.

### <u>Nature of the Plaintiffs' Business</u>

---

[1] In the event the District Judge declines to adopt this Report and Recommendation, this court will address the plaintiffs' claim that the Board's decision violated the TCA because it prohibited, or had the effect of prohibiting, the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

[2] Where, as here, the court's analysis is directed to whether the Board's written decision is supported by substantial evidence in the record, the reviewing court "is confined to the administrative record, absent a claim of procedural irregularity."  <u>Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals</u>, 297 F.3d 14, 22 (1st Cir. 2002). Accordingly, the facts set forth herein are derived from the following materials to the extent those materials reflect evidence contained in the administrative record before the Board: (1) the Plaintiffs' Local Rule 56.1 Statement of Material Facts (Docket No. 28) ("PF"); (2) the Declaration of Francis D. Parisi (Docket No. 32) ("Parisi Decl.") and the exhibits attached thereto ("Pl. Ex. __"); (3) the Defendants' Local Rule 56.1 Statement of Disputed Material Facts (Docket No. 37) ("DF"); and (4) the Plaintiffs' Response to Defendants' Local Rule 56.1 Statement of Disputed Material Facts (Docket No. 48) ("PR").  Because the remaining evidence submitted by the parties, including the evidence contained in the Declarations of Brian S. Grossman, Roger Entner and Richard Conroy, and in the Affidavit of Aaron Clausen, is outside the administrative record, it has not been incorporated into this court's Statement of Facts.

Plaintiff U.S. Wireless is engaged in the business of developing wireless infra-structure, and has participated in the development of more than 50 such sites throughout the country. (Pl. Ex. A, Attach. 6 at 1). As part of its business, U.S. Wireless leases ground space for the construction, permitting and operation of telecommunications facilities for use by wireless carriers which hold licenses from the Federal Communica-tions Commission ("FCC"). (Id.). On December 10, 2010, U.S. Wireless entered into an agreement with the City to lease cemetery property located at 363 Boston Road in Lowell (the "Property") for use as a multiple user communications facility. (PF ¶ 3; Parisi Decl. ¶ 3; see also Pl. Ex. A, Attach. 2 at 1). As described below, the plaintiffs are seeking a special permit from the ZBA to construct and operate a telecommunications facility at the Property.

Plaintiff T-Mobile is licensed by the FCC to provide personal wireless communica-tions services to customers throughout the United States, including in Massachusetts. (PF ¶ 4; Pl. Ex. A, Attach. 6 at 1-2). Its goal is to design a wireless network that will enable it to provide reliable wireless services to its customers, whether those customers are on the street, in a vehicle, or in a building. (Pl. Ex. B, Attach. 1 ¶ 3). Because a growing percentage of T-Mobile's subscribers are eliminating their land lines and electing to use their wireless devices as their sole means of communication, T-Mobile's ability to provide reliable in-building service is critical to its customers. (Id. ¶¶ 9, 11; PF ¶ 8). It is also essential to the plaintiff's ability to compete with other wireless service providers. (Pl. Ex. B., Attach. 1 ¶ 9; PF ¶ 8).

Currently, T-Mobile is in the process of designing and constructing wireless tele-communications networks to serve areas in and around Lowell.  (Pl. Ex. A, Attach. 6 at 2). In order to achieve that goal, T-Mobile must create and maintain a network of personal wireless service facilities consisting of antennas mounted on poles, buildings, or other structures that are connected by cables to small equipment cabinets located near the antenna.  (PF ¶ 6; Pl. Ex. B, Attach. 1 ¶ 21).  The antennas transmit voice and data to subscribers within a defined area of coverage.  (Pl. Ex. B, Attach. 1 ¶ 21).  They also feed radio signals received from mobile transmitters such as telephones through equipment located in the cabinet, and, ultimately, into ordinary phone lines from which the calls can be transmitted anywhere in the world.  (Id.).  In order to maintain reliable, uninterrupted service to T-Mobile telephone users living or traveling in a given area, there must be a continuous interconnected series of facilities, which overlap in part to form a grid or honeycomb pattern.  (PF ¶ 6).  Therefore, each facility must be carefully located so that it can properly interact with surrounding facilities.  (Id.).  If T-Mobile is unable to construct personal wireless service facilities within a specific geographic area, it will not be able to provide reliable, uninterrupted service to consumers within that area.  (Id.).

## T-Mobile's Efforts to Remedy a Gap in Coverage

After identifying a significant gap in T-Mobile's coverage network in the vicinity of the Property, T-Mobile's radio frequency ("RF") engineers identified a "search area" within which T-Mobile would need to install a new wireless facility.  (See id. ¶ 54; Pl. Ex. A, Attach. 12 ¶ 3).  T-Mobile then retained Andrew Thompson ("Thompson"), a Site

Acquisition Specialist, to perform site acquisition and development tasks aimed at remedying T-Mobile's gap in service.  (PF ¶ 56).  Thompson undertook a thorough and comprehensive investigation of potential locations for the installation of a wireless facility within the search area identified by T-Mobile's RF engineers, and concluded that the Property was the only feasible alternative for remedying the significant coverage gap in T-Mobile's wireless network.  (Id. ¶¶ 55, 58, 63).

In connection with his investigation, Thompson reviewed the City's Zoning Ordinance ("Ordinance") in order to identify areas within which wireless facilities are permitted.  (Id. ¶ 59).  Section 7.6 of the Ordinance establishes general regulations for the siting of telecommunications facilities within Lowell.  (See Ordinance § 7.6.1).[3]  It also aims to enhance and satisfy the following seven goals:

> 1.    Preserve the authority of the City of Lowell to regulate and to provide for reasonable opportunity for the siting of telecommunications facilities.
>
> 2.    Reduce adverse impacts such facilities may create, including, but not limited to impacts on aesthetics, environmentally sensitive areas, historically significant locations, flight corridors, health and safety by injurious accidents to personal property, and prosperity through reasonable protection of property values.
>
> 3.    Provide for co-location and minimal impact siting options through an assessment of technology, current location options, future available locations, innovative siting techniques, and siting possibilities beyond the political jurisdiction of the City of Lowell.

---

[3]  Relevant portions of the City's Zoning Ordinance are attached as Exhibit 1 to the Affidavit of R. Eric Slagle, which was submitted as an attachment to the Defendants' Local Rule 56.1 Statement of Disputed Material Facts (Docket No. 37).

4.      Permit the construction of new telecommunications facilities only when all other reasonable opportunities have been exhausted, and encourage the configuration of new facilities to minimize the adverse visual impact.

5.      Require co-location of antennas, to the highest extent possible, in order to reduce the cumulative negative impacts upon the City of Lowell.

6.      Provide for the removal of abandoned telecommunications facilities.

7.      Preserve the authority of the Building Department of the City of Lowell to conduct an inventory of existing telecommunications facilities as necessary.

(Id.).

Based on the requirements of the Ordinance, Thompson identified and considered four alternate locations to the Property. (PF ¶ 64). However, two of those sites were ruled out by Thompson and T-Mobile's RF engineers because the construction of a wireless facility at either of those locations would not have remedied the gap in T-Mobile's service within the City of Lowell. (Id. ¶¶ 71-72, 74-75). A third site, which was located in the neighboring Town of Chelmsford, was eliminated because Chelmsford was unwilling to release a request for proposals at that site, and the fourth site was eliminated after communications between T-Mobile and the Lowell Planning Board indicated that the site would not be a viable alternative. (Id. ¶¶ 66-70). Accordingly, Thompson concluded that there were no alternative locations to the Property within the available zoning districts that would enable T-Mobile to remedy its significant gap in coverage. (Id. ¶ 63; Pl. Ex. A, Attach. 12 ¶ 7).

## The Plaintiffs' Application to the ZBA

Under the Ordinance, anyone wishing to construct a telecommunications facility in Lowell must obtain a special permit from the ZBA. (Ordinance § 7.6.3). On or about March 16, 2011, U.S. Wireless and T-Mobile submitted an application to the ZBA for a special permit to install, operate, and maintain a wireless communications facility at the Property. (PF ¶ 1). The facility proposed by the plaintiffs includes a 49-foot by 59-foot rectangular compound surrounded by a stockade fence and containing a 150-foot tall monopole telecommunications tower on which T-Mobile would place nine flush mounted antennas. (Id. ¶ 2). The compound also would contain T-Mobile's equipment cabinets, backup battery cabinets, and a power/telephone cabinet. (Id.).

In their application, T-Mobile and U.S. Wireless explained how their proposed facility would comply with each of the goals and requirements set forth in Section 7.6 of the Ordinance. (Pl. Ex. A, Attach. 6 at 5-14). The plaintiffs also submitted evidence demonstrating how the proposed facility would satisfy Section 7.6 of the Ordinance. (PF ¶ 106). Such evidence included, but was not limited to, affidavits from T-Mobile's Site Acquisition and RF experts showing that T-Mobile was seeking to fill a well defined gap in the area of the Property, and describing why there were no existing structures in that area which could satisfy T-Mobile's coverage objective. (See Pl. Ex. A, Attach. 6 at 13; Pl. Ex. B, Attach. 1 and 2). Additionally, because the Ordinance requires site plan approval from the Lowell Planning Board for the construction of all freestanding telecommunications towers, T-Mobile and U.S. Wireless explained how their proposed

facility would comply with the requirements for obtaining site plan approval set forth in Section 11.4.10 of the Ordinance.  (Id. at 15-16).

Among the materials that the plaintiffs submitted to the Board in support of their application was a letter from the Commissioner of Lowell's Department of Public Works to the Planning Board recommending site plan approval of the project.  (PF ¶¶ 107, 109). In his letter, the Commissioner noted that the construction of a telecommunications facility at the Property not only would accommodate commercial wireless communications providers, but also would "provide the City of Lowell's Police Department, Fire Department, Public Works Department and Emergency Operations Center with radio antenna communication equipment attachment space on the tower to facilitate and improve emergency, mutual aid, and day-to-day communications within the City of Lowell."  (Id. ¶ 108).  The Planning Board granted the plaintiffs' request for site plan approval of the proposed facility on May 13, 2011.  (Id. ¶ 110).

During the course of its administrative proceedings, the ZBA retained IDK Communications ("IDK") to conduct an analysis of the plaintiffs' application.  (PF ¶ 80). IDK reviewed the plaintiffs' technical information and coverage analysis, and analyzed the RF coverage that would be afforded by the proposed facility as well as by potential alternative sites.  (Pl. Exs. D and E).  Following its analysis, IDK concluded that there were coverage gaps in T-Mobile's service in the vicinity of the Property, and that those areas "offer in-vehicle coverage with limited in-building coverage."  (PF ¶ 85; Pl. Ex. D at 4; Pl. Ex. D at 4).  IDK also determined that the proposed site would fill the identified

coverage gaps and would offer significant in-building coverage, and that, in contrast, the use of existing sites would not provide enough coverage to remedy the gap in the area near the Property.  (See PF ¶¶ 86-87).

The ZBA held public hearings on the plaintiffs' application for a special permit in May, June and July 2011.  (PF ¶¶ 112-14).  During the first public hearing, T-Mobile and U.S. Wireless presented evidence demonstrating the existence of a significant gap in T-Mobile's network coverage in Lowell.  (Parisi Decl. ¶ 13).  They also presented evidence showing that the construction of the proposed facility at the Property would remedy the coverage gap, and that alternative locations had been investigated and ruled out because they were either unavailable or not technically feasible.  (Id.).  During the hearing process, no experts or representatives of the City provided any testimony or submitted any materials to rebut this evidence or to show that a technically feasible alternative location was available to remedy the gap in T-Mobile's coverage.  (Id. ¶¶ 19-20).

The record indicates that during the hearings, residents whose homes abutted the Property expressed aesthetic concerns about the proposed facility.  (PF ¶ 115).  However, there is no evidence as to the number of residents who voiced concerns or the substance of the residents' comments.  The ZBA requested additional photographic evidence from the plaintiffs in order to respond to the residents' concerns, and the plaintiffs submitted photographs depicting views of the proposed site from abutting properties.  (PF ¶ 115; Pl. Ex. F).  That evidence indicates that the proposed facility would have little or no adverse visual impact on the residential areas surrounding the Property.  (See id.).

## The ZBA Decision

The third and final public hearing on the plaintiffs' application was held on July 25, 2011.  (PF ¶ 114).  During that hearing, the ZBA voted to deny the plaintiffs' request for a special permit to construct a wireless telecommunications facility at the Property.  (Id.). The ZBA's written decision was filed with the City Clerk on August 5, 2011.  Therein, the Board described the basis for its denial as follows:

> The Board finds that based on the data provided in the application and by the peer review analysis the project proposal demonstrates adequate radio frequ[e]ncy coverage for 'in-car' and voice service. The Board finds that ther[e] is a gap in in-house coverage within the target area based on data provided in the application and by the peer review analysis, however, the provision of in-house radio frequency coverage does not have the effect of prohibiting the provision of personal wireless service.
>
> The Board also found that the proposed telecommunications facility would have an adverse affect on the neighborhood and will specifi-cally have a negative impact on the social and economic needs of the neighborhood considering the structure is industrial in character and is not a compatible use in the residential zoning district and surrounded public parks and cemetery.

(Pl. Ex. C at 2).  The Board provided no further explanation for its decision to deny the plaintiffs' application.  (See id.).  In particular, the Board did not identify any specific evidence or cite to any provisions of the Ordinance.  (Id.).  Nor did it make any additional findings of fact describing the basis for its reasoning.  (Id.).

Additional factual details relevant to the court's analysis are provided below where appropriate.

## III.  ANALYSIS

A.    __Summary Judgment Standard of Review__

Summary judgment is appropriate when the moving party shows, based on the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law."  Id. (quotations, punctuation and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).  The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See Vineberg, 548 F.3d at 56.  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of

-12-

material fact exists and the moving party is entitled to judgment as a matter of law,

summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134,

143 (D. Mass. 2006).

### B.   Requirements of the TCA

The TCA "works like a scale that, inter alia, attempts to balance two objects of

competing weight: on one arm sits the need to accelerate the deployment of telecommuni-

cations technology, while on the other arm rests the desire to preserve state and local

control over zoning matters." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91,

94 (1st Cir. 2002); see also Town of Amherst, N.H. v. Omnipoint Commc'ns Enter., Inc.,

173 F.3d 9, 13 (1st Cir. 1999) (the TCA "is a deliberate compromise between two

competing aims – to facilitate nationally the growth of wireless telephone service and to

maintain substantial local control over siting of towers.").  Accordingly, "[t]he TCA

preserves state and local authority over the siting and construction of wireless communica-

tion facilities, subject to five exceptions specified in the Act." Second Generation Props.,

L.P. v. Town of Pelham, 313 F.3d 620, 627 (1st Cir. 2002).  These exceptions are codified

at 47 U.S.C. § 332(c)(7)(B), and two of them have potential relevance in this case.  First,

the TCA requires that any decision by a local government "to deny a request to place,

construct, or modify personal wireless service facilities shall be in writing and supported

by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

Second, the TCA provides that local governments, in regulating "the placement,

construction, and modification of personal wireless service facilities[,] . . . shall not

prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Because this court finds that the Board's decision was not supported by substantial evidence and therefore violated the TCA, this court will not reach the plaintiffs' claim that the decision resulted in an effective prohibition of personal wireless services. See T-Mobile Central, LLC v. Unified Gov't of Wyandotte County, Kan., 546 F.3d 1299, 1306 (10th Cir. 2008) (finding it unnecessary to reach the effective prohibition claim in light of court's ruling in favor of the plaintiff on its substantial evidence claim); Nextel Commc'ns of the Mid-Atl., Inc. v. Town of Sudbury, No. Civ. A. 01-11754-DPW, 2003 WL 543383, at *8 (D. Mass. Feb. 26, 2003) (unpub. op.) (declining to address plaintiffs additional claims under the TCA after finding for plaintiff on its substantial evidence claim).

"The TCA's substantial evidence test is a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable zoning requirements." ATC Realty, LLC, 303 F.3d at 94 (quoting Omnipoint Commc'ns MB Operations, LLC v. Town of Lincoln, 107 F. Supp. 2d 108, 115 (D. Mass. 2000)). "The test is fairly deferential to the opinion of the zoning authority and a reviewing court is not free to substitute its own judgment for that of the local authority, even if the reviewing court would have decided the issue differently as an original matter." Town of Lincoln, 107 F. Supp. 2d at 115. Therefore, "[j]udicial review under this standard, 'even at the summary judgment stage, is narrow.'" Sw. Bell Mobile Sys., Inc. v. Todd, 244 F.3d

51, 58 (1st Cir. 2001) (quoting <u>Associated Fisheries of Me., Inc. v. Daley</u>, 127 F.3d 104, 109 (1st Cir. 1997)).

In evaluating the local zoning authority's decision under the substantial evidence standard, "a court must consider the record as a whole, including contrary evidence. However, the possibility of drawing two inconsistent conclusions does not mean that the zoning authority's decision is not supported by substantial evidence . . . .  The critical inquiry under the substantial evidence test is whether a zoning authority's denial is based on such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, or whether it is based upon unsubstantiated conclusions." <u>Town of Lincoln</u>, 107 F. Supp. 2d at 115 (quotations and citations omitted).  "Thus, if the issue is simply one of whether the board's decision is supported by substantial evidence, the courts defer to the decision of the local authority, provided that the local board picks between reasonable inferences from the record before it." <u>Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals</u>, 297 F.3d 14, 22-23 (1st Cir. 2002).

C.      <u>Adequacy of the Written Record</u>

The plaintiffs argue, as a threshold matter, that the Board violated the first require-ment of section 332(c)(7)(B)(iii) that denials of requests to construct a personal wireless service facility be "in writing."  (<u>See</u> Pl. Mem. (Docket No. 27) at 8-9; Pl. Reply Mem. (Docket No. 47) at 3).  Specifically, the plaintiffs contend that the ZBA's written decision is inadequate because it fails to explain the basis for denying the plaintiffs a special use permit, and because it is insufficient to allow a reviewing court to evaluate the evidence

supporting the Board's decision.  (Id.).  Although the Board's decision is short on detail, this court finds that it is not so inadequate as to justify summary judgment for the plaintiffs on this basis.

While the TCA requires a written decision, there is no requirement that such a decision contain formal findings of fact and conclusions of law.  Sw. Bell Mobile Sys., Inc., 244 F.3d at 59.  As the First Circuit has recognized, "local boards that administer the zoning laws are primarily staffed by laypeople.  Though their decisions are now subject to review under the TCA, it is not realistic to expect highly detailed findings of fact and conclusions of law."  Id.  Nevertheless, "permitting local boards to issue written denials that give no reasons for a decision would frustrate meaningful judicial review, even where the written record may offer some guidance as to the board's rationale."  Id. at 60.  Accordingly, the First Circuit has concluded that under the TCA, local boards must "issue a written denial separate from the written record[,]" which "must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons."  Id.  "In other words, the crucial con-sideration in determining whether a Board's statement of decision complies with the TCA is whether the actual reasons underlying the Board's determination can be determined by a reviewing court."  Town of Sudbury, Mass., 2003 WL 543383, at *10.

In the instant case, the Board issued a written decision separate from the adminis-trative record in which it provided two separate bases for its denial of the plaintiffs' application.  First, the Board explained that it was denying the application because,

although the record established the existence of a gap in in-house coverage within the plaintiffs' target area, such a gap "does not have the effect of prohibiting the provision of personal wireless service." (Pl. Ex. C at 2). Second, the Board found that the proposed facility would "have a negative impact on the social and economic needs of the neighbor-hood" in light of the fact that the proposed structure would be industrial in character and would not be compatible with the residential character of the surrounding area. (Id.). Although the decision provides no further explanation for the Board's findings and contains no citations to the underlying record, this court finds that "the Board states the reasons for its decision with sufficient clarity to permit an assessment of the evidence in the record supporting its reasons." Sw. Bell Mobile Sys., Inc., 244 F.3d at 60. Accord-ingly, a rejection of the ZBA's decision on the ground that it fails to satisfy the TCA's requirement that denials be in writing "would be a victory of form over substance that is neither required by nor attentive to the purposes of the [TCA]." Town of Sudbury, 2003 WL 543383, at *10.

### D.    Substantial Evidence Review

The plaintiffs next argue that they are entitled to summary judgment because the Board's reasons for denying their application were not supported by substantial evidence in the written record. This court agrees. Therefore, this court recommends that the plaintiffs' motion for summary judgment be allowed with respect to Count I of their complaint.

### The Board's Finding Regarding In-House Coverage

-17-

As described in its written decision, the Board found that the evidence before it established the existence of a gap in in-house coverage within the plaintiffs' target area. (Pl. Ex. C at 2).  Nevertheless, the Board explained that it was denying the plaintiffs' permit application because the existence of a gap in T-Mobile's in-house coverage "does not have the effect of prohibiting the provision of personal wireless service." (Id.).  The defendants seem to have abandoned this argument before this court, and appear to argue instead that the plaintiffs have failed to establish the existence of a substantial gap in coverage within the Lowell city limits.  In particular, the defendants contend that the plaintiffs' "description of the area within the purported gap in coverage includes property outside the boundaries of Lowell."  (Def. Opp. Mem. (Docket No. 36) at 6).  As an initial matter, this argument is not appropriately considered by this court because, as the First Circuit has held, "a board's decision may not present a moving target[.]"  Nat'l Tower, LLC, 297 F.3d at 22.  Thus, it is well established that the court "will not uphold a board's denial of a permit on grounds that it did not present in its written decision."  Id.  In any event, the Board's decision must fail because Section 7.6 of the Ordinance does not require applicants for a special permit to prove the existence of a gap in their service, much less that the gap has the effect of prohibiting the provision of personal wireless services.  (Pl. Mem. at 9-10).  Although the TCA precludes local zoning boards from issuing decisions that "prohibit or have the effect of prohibiting the provision of personal wireless services[,]" 47 U.S.C. § 332(c)(7)(B)(i)(II), the Ordinance imposes no obligation upon applicants for a special permit to prove an effective prohibition on the provision of

such services.  Therefore, the Board's first reason for denying the plaintiffs' application was in error.

"[T]he substantial evidence inquiry does not require incorporation of the substantive federal standards imposed by the TCA, but instead requires a determination whether the zoning decision at issue is supported by substantial evidence in the context of applicable *state and local law*."  Unified Gov't of Wyandotte, 546 F.3d at 1307 (quoting MetroPCS, Inc. v. City and County of San Francisco, 400 F.3d 715, 723-34 (9th Cir. 2005)) (emphasis in original).  See also Sw. Bell Mobile Sys., Inc., 244 F.3d at 58 ("Substantial evidence review under the TCA does not create a substantive federal limitation upon local land use regulatory power, but is instead centrally directed to those rulings that the Board is expected to make under state law and local ordinance in deciding on variances, special exceptions and the like." (quotations and citations omitted)).  Consequently, courts must look not to the TCA but "to the requirements set forth in the local zoning code to determine the substantive criteria to be applied in determining whether substantial evidence existed to support the Board's decision."  Unified Gov't of Wyandotte, 546 F.3d at 1307.

The record in the instant case shows that the Board applied a criterion that was not required by the applicable zoning Ordinance.  Under Section 7.6 of the Ordinance, applicants for a special permit to construct and operate a telecommunications facility in Lowell are required to submit certain evidence and materials in support of their application, meet certain design and performance standards, and comply with certain maintenance and

removal requirements.  <u>See</u> Ordinance §§ 7.6.5-7.6.9.  However, there is no requirement

that such applicants provide evidence of a gap in their service or demonstrate an effective

prohibition on the provision of personal wireless services.  <u>See</u> <u>generally</u> Ordinance § 7.6.

The Ordinance does state that "[t]he local regulations shall not prohibit or have the effect

of prohibiting the provision of personal wireless services."  <u>Id.</u> § 7.6.3.  While this

requirement imposes a limitation on the ZBA's ability to deny applications for special

permits, it imposes no affirmative requirements upon the applicant, and does not provide a

basis for denying an application that otherwise complies with the Ordinance.  By relying

on "a criterion for which the applicable local ordinance[ ] did not provide, the Board failed

to act on the basis of substantial evidence."  <u>Unified Gov't of Wyandotte</u>, 546 F.3d at

1308.

       Even if the Ordinance had required the plaintiffs to establish an effective prohibi-

tion on the provision of personal wireless services, the Board's decision would still lack

substantial support in the record.  The Board offered no explanation in its written decision

for its determination that the inability to close a gap in in-house coverage would not

amount to an effective prohibition, and the defendants have not cited to any evidence in

the record that would provide any factual support for this conclusion.  Moreover, the

Board's finding is inconsistent with unrebutted evidence from the administrative record

showing that T-Mobile's ability to offer reliable in-building service is critical to its

customers and essential to its ability to compete with other wireless service providers.

(<u>See</u> Pl. Ex. B, Attach. 1 ¶ 9).  Thus, it constitutes nothing more than an unsubstantiated

conclusion, which violates the substantial evidence limitation of the TCA.  See Town of Sudbury, 2003 WL 543383, at *12 (explaining that TCA precludes decisions based on "unsubstantiated conclusions").

Finally, courts that have addressed the issue have routinely concluded that a significant gap in in-building coverage may result in an effective prohibition of personal wireless services.  See, e.g., T-Mobile W. Corp. v. City of Agoura Hills, No. CV 09-9077 FSF (PJWx), 2010 WL 5313398, at *8 (C.D. Cal. Dec. 20, 2010) (unpub. op.) (finding that "a gap in a provider's in-home coverage that consists of more than a few isolated pockets of inadequate in-home coverage suffices to show a significant gap exists" for purposes of proving an effective prohibition claim under the TCA); T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County/Kansas City, Kan., 528 F. Supp. 2d 1128, 1168-69 (D. Kan. 2007) (finding that lack of in-building coverage is sufficient to constitute a significant gap for purposes of proving an effective prohibition claim), aff'd 546 F.3d 1299 (10th Cir. 2008); MetroPCS Inc. v. The City and County of San Francisco, No. C 02-3442 PJH, 2006 WL 1699580, at *10 (N.D. Cal. June 16, 2006) (unpub. op.) (finding that any analysis as to whether a significant gap in coverage exists for purposes of proving an effective prohibition claim "should include consideration of a wireless carrier's in-building coverage"); U.S.C.O.C. of N.H. RSA #2 v. Town of Dunbarton, N.H., No. Civ. 04-CV-304-JD, 2005 WL 906354, at *5 (D.N.H. Apr. 20, 2005) (unpub. op.) (holding that in-building coverage is relevant to question whether a significant gap in coverage exists

for purposes of evaluating TCA's effective prohibition limitation).  Thus, the ZBA's

finding to the contrary is erroneous as a matter of law.

### The Board's Finding Regarding the Effect on the Neighborhood

The second reason the Board gave for denying the plaintiffs' application for a

special permit was that the proposed facility would "have a negative impact on the social

and economic needs of the neighborhood considering the structure is industrial in

character and is not a compatible use in the residential zoning district and surrounded

public parks and cemetery."  (Pl. Ex. C at 2).  Again, the Board seems to have abandoned

this argument before this court, and appears to argue instead that the plaintiffs failed to

investigate certain alternative sites.  (See Def. Opp. Mem. at 6-9).  As detailed above, this

court will not consider grounds that were not presented in the Board's written decision.

See Nat'l Tower, LLC, 297 F.3d at 22.  With respect to the Board's stated basis for denial,

this court finds that it lacks substantial support in the record.  Although the Ordinance

specifically aims to reduce adverse impacts that telecommunications facilities may have on

the community, (see Ordinance § 7.6.1 ¶ 2), there is nothing in Section 7.6 of the

Ordinance which precludes the siting of such facilities in residential districts or deems

them incompatible with such districts.  The Board presented no facts, and this court has

found none, to support the conclusion that the social and economic needs of the

neighborhood would be adversely impacted by the proposed facility.  For instance, there is

no evidence that the facility would have any negative impact on property values.  Nor is

there any evidence that the facility would limit that ability of the neighborhood to maintain

and attract residents.  "The substantial evidence requirement plainly proscribes local government agencies from reaching decisions based on unsubstantiated conclusions." Town of Sudbury, 2003 WL 543383, at *12 .  The Board's bare assertions regarding the proposed facility's impact on the neighborhood are insufficient to satisfy the substantial evidence requirement of the TCA.

The record does indicate that during the hearings on the plaintiffs' application, some unspecified number of neighboring residents expressed concern about the aesthetic impact of the project on the community.  (See PF ¶ 115).  However, such "generalized concerns about aesthetics [are] not deemed sufficiently substantial evidence to justify the refusal to grant a permit."  Nextel Commc'ns of the Mid-Atlantic, Inc. v. Manchester-by-the-Sea, 115 F. Supp. 2d 65, 72 (D. Mass. 2000).  Moreover, the plaintiffs responded to the residents' concerns by submitting photographic evidence which indicated that the proposed telecommunications facility would have little if any visual impact on the nearby properties.  (See PF ¶ 115; Pl. Ex. F).  Thus, no reasonable person could conclude from the evidence before the Board that the proposed facility was likely to have a negative impact on the social or economic needs of the neighborhood.  Therefore, this court recommends that the plaintiffs' motion for summary judgment be allowed with respect to Count I of their complaint.

**E.**     **Appropriate Relief**

"While prepared to tolerate some delay, Congress made clear in two different provisions [of the TCA] that it expected expeditious resolution both by the local authorities and by courts called upon to enforce the federal limitations." Town of Amherst, 173 F.3d at 17 n.8.  "An award of injunctive relief, rather than a remand for further proceedings, best fulfills that statutory goal." Brehmer v. Planning Bd. of Town of Wellfleet, 238 F.3d 117, 121 (1st Cir. 2001).  Therefore, "in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order . . . instructing the board to authorize construction." Nat'l Tower, 297 F.3d at 21-22.

The First Circuit has indicated that there may be circumstances in which a remand may be appropriate, such as where there has been "good faith confusion by a board that has acted quite promptly[.]" Id. at 24.  Nothing in the record before this court suggests that this is one of those circumstances.  Accordingly, this court concludes that the plaintiffs' request for injunctive relief should be granted.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the "Plaintiffs' Motion for Summary Judgment" (Docket No. 26) be ALLOWED with respect to Count I of the complaint, and that the defendants

be directed to issue all permits and approvals necessary for the construction of the

plaintiffs' proposed telecommunications facility at the Property.[4]


                                        /s/Judith Gail Dein
                                        Judith Gail Dein
                                        United States Magistrate Judge

---

[4]The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).